UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | |
|---|---|
| AMERICREDIT FINANCIAL SERVICES, ) | |
|       Appellant, ) | |
| ) | |
|   vs. ) | 1:08-CV-01281-TWP-TAB |
| ) | |
| ELLIOTT JACOBS AND ORA LEE ) | |
| JACOBS, ) | |
|       Appellees. ) | |

**ENTRY ON APPEAL OF BANKRUPTCY COURT ORDER**

This is an appeal of two bankruptcy courts' orders.  One order overruled a creditor's objection to confirmation of a Chapter 13 bankruptcy plan in the second of two bankruptcies filed by appellees, Elliott and Ora Lee Jacobs, in the United States Bankruptcy Court for the Southern District of Indiana.  The second order confirmed the plan.

In December 2003, appellees filed the first of their two relevant bankruptcy petitions and in May 2004 a Chapter 13 bankruptcy plan filed by the appellees was approved. Appellant, Americredit Financial Services ("Americredit"), was a creditor in the first bankruptcy proceeding with a claim against the Jacobs, which was secured by a lien on their 2003 Ford pick-up truck.  That claim was allowed under the plan, and pursuant to the "cram down"[1] approved by the bankruptcy court, the Trustee was to pay out a total of $24,327 to

---

[1]The so-called " cram down" provision of 11 U.S.C. § 1325(a)(5) allows a debtor to retain possession of certain collateral over the objection of the creditor, but allows the creditor to
(continued...)

Americredit over the course of the plan through equal monthly payments.  In January 2008, the Chapter 13 Trustee moved to dismiss the bankruptcy because the Jacobs had failed to make payments to the Trustee for disbursement pursuant to the plan.  At that time, the Jacobs had paid $22,789.75 in principal on the Americredit claim and $3,734.78 in interest, with only $1,537.25 left on the balance of the cram down.[2]  The bankruptcy court granted the Trustee's motion and the first bankruptcy case was dismissed in February 2008.

Only a couple of weeks after the first bankruptcy was dismissed,  the Jacobs obtained a new attorney and filed a new bankruptcy petition under Chapter 13 on March 12, 2008.  They filed another proposed plan in which they offered to hold Americredit secured for the $1,537.25 balance existing under the first bankruptcy plan that was dismissed.  Americredit objected to the proposed plan, claiming that its lien on the pick-up truck reattached at the time the first bankruptcy was dismissed and its collateral needed to be valued in the current plan at its current market value, which it claims is $14,625.

_____

[1](...continued)
keep its lien and receive payments over the life of the plan that will total the present value of the collateral.

[2]The Court is using dollar amounts which were provided to the bankruptcy court by appellees' attorney during the course of the hearing held on Americredit's objection to the confirmation of the Chapter 13 plan in the second bankruptcy filed by the Jacobs.  Unfortunately, appellees have filed no brief in this appeal, which could have confirmed the amount of the payments.  Nevertheless, the transcript of the hearing reveals that Americredit made no challenge to those figures at the time of the hearing; nor has Americredit  suggested in this appeal that the attorney for the Jacobs was wrong in his representation of amounts previously paid.

-2-

A hearing was held on Americredit's objection and the attorney for the Jacobs represented that the dismissal of their first bankruptcy case was the result of a breakdown in communication between the Jacobs and their first attorney, who failed to object to the dismissal motion filed by the Trustee. The Jacobs asked the bankruptcy court to "utilize its equitable power" to approve the plan as submitted, with the Jacobs' payment to Americredit limited to the balance on the previous cram down. At the hearing, they noted that under the plan they submitted, their total payments to Americredit over the course of the contract and the two bankruptcy proceedings would exceed $40,000. Americredit objected on the basis that the second bankruptcy was a totally new case and its collateral must be valued at its current market price. Americredit also pointed out that even with payment of more than $40,000, the Jacobs would still be paying less than the $54,000 in total principal and interest that would have been due under the original contract.

Questioning the diligence of the Jacobs' first attorney, the bankruptcy judge opined on the record that he would never have dismissed the first bankruptcy if he had known that the Jacobs had paid such a high percentage of the original contract and that they only had a relatively small amount left  to pay when the motion to dismiss was filed. He then overruled Americredit's objection to the plan, prompting this appeal.

The issue here is relatively simple. The bankruptcy court approved a plan that listed the value of the pick-up truck as equal to the balance due the creditor at the time of the dismissal of the previous bankruptcy plan rather than the truck's current market or

replacement value. Was it within the bankruptcy court's discretion to do so? In short, the answer to that question is "no."

The bankruptcy court did not have discretion to ignore the dictates of the bankruptcy code, which requires that a debtor retaining possession of personal property, over the objection of a valid lienholder, pay the lienholder, over the course of the plan, an amount equal to the replacement value of the property at the time the plan is confirmed. *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 960-962 (1997). This, of course, assumes that the amount the debtor still owes the creditor is in excess of the value of the collateral. Otherwise, the creditor is limited to repayment of the amount of the debt. In this case, the Jacobs' schedules indicate that $8,000 was the balance remaining to be paid to Americredit when the second petition was filed and, though they differ in their valuations of the market value of the secured truck, both the Jacobs and Americredit agree that its value at that time exceeded $8,000.

At the time the first bankruptcy proceeding was dismissed before a discharge was obtained, Americredit's lien on the pick-up truck was restored in full. 11 U.S.C. § 349; *In re Booth,* 289 B.R. 665, 669 (Bankr. N.D.Ill. 2003); *In re Groves,* 27 B.R. 866, 868 (Bankr. D.Kan. 1983). At the time the second bankruptcy petition was filed, Americredit was still a creditor for the amount that remained owing on its original contract with the Jacobs and it had a secured claim for up to the amount of the value of the pick-up truck. While the Jacobs' payments during the first bankruptcy reduced their debt, the total amount of that debt was no

longer subject to the cram down order, because the case was dismissed prior to the completion of the plan. *In re Groves,* 27 B.R. at 867-868.

After filing their second bankruptcy petition, the Jacobs had three options that would allow the bankruptcy court to approve their Chapter 13 plan with respect to Americredit's secured claim: (1) surrender the collateral; (2) obtain Americredit's agreement to the plan; or (3) seek to cram down the plan over Americredit's objection by allowing it to retain the lien and be paid, over the course of the plan, the full value of its collateral.  11 U.S.C. § 1325(a)(5).  The value of the collateral is its replacement value.  11 U.S.C. § 506(a)(1); *Rash,* 520 U.S. at 960-961.  We find no basis in the bankruptcy code or case law to support a court's discretionary power to alter the method of valuing collateral or to confirm a plan that does not comply with one of the three options for handling a secured claim.  The bankruptcy court may have had other options to address what it clearly saw as an inequitable situation,[3] and may wish to consider those options on remand, but it was not within the court's discretion to confirm a plan that improperly valued the collateral securing the debt to Americredit.

---

[3]While this Court has not researched case law with respect to reopening a previously dismissed bankruptcy case to allow the complete pay-off of a previous cram down, it would appear that 11 U.S.C. § 350 offers at least an arguable avenue for relief if the debtor subsequently becomes subject to an inequitable circumstance born of that first proceeding.

**Conclusion**

For the reasons stated above, the orders of the bankruptcy court overruling Americredit's objection and confirming the Jacobs' Chapter 13 plan are reversed, and the matter is remanded for proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: <u>08/16/2010</u>

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Dennis Mark Ostrowski
MAPOTHER & MAPOTHER PSC
loubknotices@mapother-atty.com

Tom  Scott
TOM SCOTT AND ASSOCIATES
tscott@tomscottlaw.com